**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**DUSTIN LEE MACLEOD,**

    **Plaintiff,**                                        **Case No. 18-cv-11653**

    v.                                              **District Judge Judith E. Levy**

**DR. WILLIAM MORITZ,**                 **Magistrate Judge Mona K. Majzoub**
**et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dustin MacLeod contends that Defendants William Moritz, Wade Hamilton, Steve Milford, Scott Whitcomb, Rick McDonald, Greg Drogowski, Eric Botorff, Lori Buford, and Dennis Knapp violated his rights under the 1836 Treaty of Washington, the First and Fourteenth Amendments to the Constitution of the United States, and various federal and state statutes. (Docket no. 4.)

Before the Court are Defendants' motion to dismiss (docket no. 19) and Plaintiff's motion for summary judgment (docket no. 26). This case has been referred to the undersigned for all pretrial proceedings, including a hearing and determination of all non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 9.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.     RECOMMENDATION**

The undersigned recommends that Defendants' motion to dismiss (docket no. 19) be **GRANTED**, that Plaintiff's motion for summary judgment (docket no. 26) be **DENIED** and that this case be dismissed in its entirety.

**II.    REPORT**

**A. Background**

The events described in the amended complaint arise from Plaintiff's ownership and use of land abutting the Pigeon River State Forest in Ostego County, Michigan (the "State Forest"). (Docket no. 4, p. 5.) Plaintiff is a member of the Sault Ste. Marie Tribe of Chippewa Indians. (*Id.* at 4.) Defendants are employees of the Michigan Department of National Resources (the "MDNR"). (*Id.* at 4–5.)

Plaintiff owns fifteen acres of land adjacent to the State Forest. (*Id.* at 5.) According to Plaintiff, the MDNR sought to purchase Plaintiff's land and consolidate that tract with the State Park. (*Id.*) Plaintiff asserts that he and other members of his tribe "maintained and reconstructed Sacred Site structures on [his] property including Arbor, alter, and sweat lodges, with a deminimus [*sic*] encroachment upon the adjacent State land." (*Id.*) Plaintiff contends that his use of the State Forest complied with his right to the "privileges of occupancy" on that land as provided by Article 13 of the 1836 Treaty of Washington (the "1836 Treaty"). (*Id.* at 6.)

The contours of the 1836 Treaty were the subject of a lawsuit by several Native American Tribes against the State of Michigan that resulted in a consent decree in 2007 (the "Consent Decree"), which was "intended to resolve conclusively such claims, and to provide for the protection of the resources in the 1836 Ceded Territory." (Docket no. 19-6.)

On October 14, 2014, the MDNR issued a citation to Plaintiff for "leav[ing] property on State land [for more than] 24 hours," a violation of MDNR State Land Rule R 299.922. (Docket no. 30-3, p. 4.) The MDNR informed Plaintiff that he had "7 days to remove [the] structure." (*Id.*) On November 18, 2014, Plaintiff appeared for a hearing on the civil infraction, was found to be responsible and was fined $100. (*Id.* at 6.) Plaintiff appealed that decision, contending that the court lacked jurisdiction because the Consent Decree mandated that the dispute be heard in a "tribal forum." (*Id.* at 10–11.) After a hearing on December 18, 2014, Judge Maria Barton upheld the citation. (Docket no. 4-1, p. 5.)

Plaintiff asserts that on May 13, 2015, Defendants "destroyed a Sacred Sundance Arbor, sweat lodges, and alter [*sic*] located on Plaintiff's land and adjacent State land" and "[e]ntered upon Plaintiff's land to deposit the debris of the Arbor, sweat lodges, and alters [*sic*] . . . onto Plaintiff's real property." (Docket no. 1, pp. 13–15.)

On May 24, 2018, Plaintiff filed his amended complaint, alleging that Defendants violated the 1836 Treaty, the Consent Decree, the First and Fourteenth Amendments of the U.S. Constitution, the Religious Land Use and Institutionalized Persons Act, the Michigan Constitution and Michigan common law. (*See generally* docket no. 4.)

On September 11, 2018, Defendants filed a motion to dismiss Plaintiff's amended complaint. (Docket no. 19.) In an order dated February 5, 2019, the undersigned directed the parties to file supplemental briefing regarding the 1836 Treaty. (Docket no. 36.) Defendants filed their supplemental brief on March 7, 2019. (Docket no. 39.) Plaintiff filed his supplemental brief on March 18, 2019. (Docket no. 41.)

### B. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. The court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

This acceptance of factual allegations as true, however, is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal quotations and citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. To make this determination, a court may apply the following two-part test: (1) "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth;" and (2) "assume [the] veracity [of the remaining allegations] and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

In addressing motions under Rule 12(b)(6), the Sixth Circuit recognizes that, in addition to the allegations of the complaint, the court "may also consider other materials that are integral to

4

the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ley v. Visteon Corp.*, 543 F.3d 801, 805 (6th Cir. 2008).

### C. Analysis

Defendants contend that Plaintiff's amended complaint fails to state a claim on which relief may be granted. (Docket no. 19.) Plaintiff filed a response to Defendants' motion (docket no. 27) as well as a summary judgment motion of his own (docket no. 26). Below, the undersigned will address the various bases for relief cited in Plaintiff's amended complaint.

#### 1. *The Treaty Itself*

Plaintiff alleges that Defendants' actions violated the 1836 Treaty, which provides that the Ottawa and Chippewa tribes "stipulate for the . . . usual privileges of occupancy [on the ceded land] until the land is required for settlement." (Docket no. 4, p. 12; docket no. 19-5, p. 7.)

International treaties entered into by the United States become part of the "supreme Law of the Land." U.S. Const. art. VI, cl. 2. But treaties do not always directly create rights that a private citizen can enforce in court. *Renkel v. United States*, 456 F.3d 640, 642–43 (6th Cir. 2006). "In fact, courts presume that the rights created by an international treaty belong to a state and that a private individual cannot enforce them." *Id.* (citing *United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001)). In the context of treaties involving Native Americans, courts should focus upon the historical context in which the treaty was written and signed and should "see that the terms of the treaty are carried out, so far as possible, in accordance with the meaning they were understood to have by the tribal representatives at the council." *Tulee v. State of Washington*, 315 U.S. 681, 684, 62 S. Ct. 862, 864, 86 L. Ed. 1115 (1942). *See also United States v. Winans*, 198 U.S. 371, 380, 25 S. Ct. 662, 664, 49 L. Ed. 1089 (1905).

5

To support a claim under 42 U.S.C. § 1983, a treaty must create "individual rights," that are "unambiguously conferred" by "unmistakable" language. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283–84 (2002). Courts should consider whether the treaty uses "rights-creating language" and "individually focused terminology," as opposed to "aggregate focus" language. *Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006) (citations omitted). Such language should not be "broad and nonspecific" in a way that is "ill-suited to judicial remedy." *Westside Mothers v. Olszewski*, 454 F.3d 532, 543 (6th Cir. 2006). *See also Jogi v. Voges*, 480 F.3d 822 (7th Cir. 2007); *Cornejo v. Cty. of San Diego*, 504 F.3d 853 (9th Cir. 2007); *Mora v. New York*, 524 F.3d 183 (2d Cir. 2008); *Gandara v. Bennett*, 528 F.3d 823 (11th Cir. 2008).

The 1836 Treaty was concluded between the United States and the Ottawa and Chippewa nations of Native Americans. (Docket no. 19-5, pp. 2–3.) In Article 13 of the Treaty, "[t]he Indians stipulate[d] for the right of hunting on the lands ceded, with the other usual privileges of occupancy, until the land is required for settlement." (*Id.* at 7.) This language is both vague and "aggregate focused." Accordingly, it does not create "individual rights" enforceable under § 1983. *See United States v. State of Mich.*, 471 F. Supp. 192, 271 (W.D. Mich. 1979) ("The fishing right reserved by the Indians in 1836 and at issue in this case is the communal property of the tribes which signed the treaty and their modern political successors; it does not belong to individual tribal members."). Therefore, the Court should dismiss Plaintiff's claim under the 1836 Treaty.

### 2. *The Consent Decree*

Alternately, Plaintiff contends that Defendants violated the terms of the Consent Decree, which was concluded by the parties to a 1973 dispute regarding the effect of the 1836 Treaty. (Docket no. 4, p. 12; docket no. 19-6.) Plaintiff was not a party to the 1973 case and was not a signatory to the Consent Decree.

"[T]hird parties to a consent decree lack standing to enforce their understanding of its terms." *Aiken v. City of Memphis*, 37 F.3d 1155, 1167 (6th Cir. 1994). *See also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975); *Vogel v. City of Cincinnati*, 959 F.2d 594 (6th Cir. 1992). Even intended third-party beneficiaries of a consent decree lack standing to enforce its terms. *Id.* at 1168.

Plaintiff contends that he is a party to the consent decree because he is a member of the Sault Ste. Marie Tribe of Chippewa Indians. (Docket no. 27, p. 4.) But Native American tribal organizations are sovereign entities distinct from their individual members. *See* 13 Mich. Civ. Jur. Indians § 4 ("While tribes possess sovereign immunity from suit absent explicit congressional or tribal consent, their officers, agents and members do not.") (citing *Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 514, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991)).

Accordingly, the Court should find that Plaintiff lacks standing to enforce the Consent Decree.

### 3. Due Process

Plaintiff contends that Defendants' actions violated the Due Process Clause of the Fourteenth Amendment. (Docket no. 4, p. 11.) The undersigned will analyze the procedural and substantive aspects of this claim separately below.

#### a. Procedural Due Process

No State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Those who seek to invoke the procedural protection of the Due Process Clause must establish that a life, liberty, or property interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Plaintiff contends that the Consent Decree gives him a property interest in the State Forest. (Docket no. 4, p. 10.) But even if he were a signatory to the consent decree, Plaintiff would not have a property interest in the injunctive relief contained therein. *See Hadix v. Johnson*, 133 F.3d 940, 943 (6th Cir. 1998) ("A consent decree in which the relief is provided subject to future modification cannot create a vested property right in that relief for due process purposes.") (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274, 114 S. Ct. 1483, 1501–02, 128 L.Ed.2d 229 (1994)).

As a result of the civil infraction issued by Defendants, Plaintiff was fined $100 and was thus deprived of property. However, Plaintiff received notice, a hearing, and an appellate process before the state deprived him of that property. Accordingly, Defendants did not violate Plaintiff's right to procedural due process. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976) ("[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.")

b. <u>Substantive Due Process</u>

Substantive due process is "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). It protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and

the interest in freedom from government actions that "shock the conscience." *Id.* (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 249–50 (6th Cir. 2003)). It also protects the right to be free from "arbitrary and capricious" governmental actions, which is another formulation of the right to be free from conscience-shocking actions. *Id.* (citing *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) and *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)).

The facts alleged in Plaintiff's amended complaint do not support a substantive due process claim. Defendants' actions were not arbitrary, capricious or conscience-shocking. To the extent that Plaintiff contends that Defendants violated his right to exercise his religious practices, that claim is addressed separately below. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (noting that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims'") (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989)).

### 4. Equal Protection

Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by removing his sundance arbors and sweat lodges while permitting hunters to leave ground blinds and tree stands on public land. (Docket no. 4, p. 11.)

The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th

Cir.2006). The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir.2006).

Plaintiff fails to plausibly allege that the State permits another class of individuals to build the type of structures he built on state land. Plaintiff contends that the arbor and lodges he constructed are the equivalent of a "brush blind," which is permitted to remain on state land for more than twenty-four hours. (Docket no. 4, p. 11.) According to the public materials provided by Defendants, a "dead natural materials ground blind" must be "must be constructed exclusively of dead and natural materials found on the ground in the area of the blind" and cannot be "fastened in any permanent manner." (Docket no. 19-8.) The structures erected by Plaintiff do not meet these criteria. (*See* docket no. 30-2 (photographs of structures referred to in amended complaint)). Accordingly, the Court should dismiss Plaintiff's equal protection claim.

### 5. *Free Exercise*

Plaintiff contends that Defendants improperly burdened his religious exercise. (Docket no. 4, p. 10.)

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. However, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532, 113 S. Ct. 2217, 2226, 124 L. Ed. 2d 472 (1993) (citing *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 110 S. Ct. 1595, 108 L.Ed.2d 876 (1990)).

The law at issue in this case, MDNR State Land Rule R 299.922, is neutral and of general applicability. It does not "target[] religious conduct for distinctive treatment." *See Lukumi*, 508 U.S. at 534. Instead, it seeks to prevent individuals from leaving property on state land for excessive periods. For the reasons set forth above, the MDNR's different treatment of brush blinds is rational, and Plaintiff does not plausibly allege that the different treatment masks a religious animus. Therefore, the Court should dismiss Plaintiff's free-exercise claim.

### 6. *Laws Not Privately Enforceable*

Plaintiff seeks relief under 18 U.S.C. § 241 (criminal conspiracy), § 242 (deprivation of rights under color of law), and § 247 (obstruction of religious exercise). (Docket no. 4, p. 13.) Plaintiff also seeks relief under 42 U.S.C. § 1996 ("[I]t shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian . . . .") and the Northwest Ordinance. Those statutes are either invalid or not enforceable by Plaintiff. Accordingly, the Court should dismiss these claims.

### 7. *RLUIPA*

Plaintiff contends that Defendants violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA"). (Docket no. 4, p. 13.)

RLUIPA directs that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest."

However, Congress expressly defined "land use regulation" as "a zoning or landmarking law," and a claimant must have "an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest." 42 U.S.C. § 2000cc-5(5).

Because State Land Rule R 299.922 is not "a zoning or landmarking law" and because Plaintiff does not have a legally cognizable interest in the State Forest, the Court should dismiss this claim.

### 8. State-law Claims

If the Court adopts the undersigned's recommendation to dismiss all of Plaintiff's federal-law claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. *See* 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim [forming a part of the same case or controversy] if . . . the district court has dismissed all claims over which it has original jurisdiction.").

### D. Conclusion

For the reasons stated herein, it is recommended that Defendants' motion to dismiss (docket no. 19) be **GRANTED**, that Plaintiff's motion for summary judgment (docket no. 26) be **DENIED** and that this case be dismissed in its entirety.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991);

*U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 29, 2019            s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff Dustin MacLeod and Counsel of Record on this date.

Dated: March 29, 2019            s/ Leanne Hosking
                                 Case Manager